# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### 2015 MSPB 29

Docket No. DE-0731-14-0059-I-1

**Kevin M. Hawes,**

**Appellant,**

**v.**

**Office of Personnel Management,**

**Agency.**

April 2, 2015

<u>Peter C. Rombold</u>, Esquire, Junction City, Kansas, for the appellant.

<u>John P. Gniadek</u>, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the Office of Personnel Management (OPM)'s determination that the appellant was unsuitable for federal employment. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the appeal to OPM pursuant to 5 C.F.R. § 731.501(b)(2), for OPM to determine whether the suitability action taken is appropriate based on the sustained charge.

## BACKGROUND

¶2      The appellant was appointed to the position of Field Examiner with the Department of Veterans Affairs (DVA). Initial Appeal File (IAF), Tab 7 at 27. After investigating the appellant's background and suitability, OPM took the following suitability actions: (1) it instructed DVA to separate the appellant from service; (2) it cancelled his eligibility for reinstatement; (3) it cancelled his eligibility for appointment; and (4) it debarred him for a period of 3 years. IAF, Tab 13 at 16. OPM's negative suitability determination was based on three charges: (1) misconduct or negligence in employment; (2) criminal or dishonest conduct; and (3) material, intentional false statement, or deception or fraud in examination or appointment. *Id.* at 16-17, 20-25.

¶3      The appellant appealed the negative suitability determination to the Board, and, after holding a telephonic hearing, the administrative judge issued an initial decision affirming OPM's decision. IAF, Tab 41, Initial Decision (ID). The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 5. OPM has filed a response in opposition to the appellant's petition. PFR File, Tab 9. The appellant has filed a reply to OPM's response. PFR File, Tab 12.

## ANALYSIS

¶4      As an initial matter, the appellant has alleged that the administrative judge held a "pro-agency" bias. PFR File, Tab 5 at 6-7. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). The appellant merely disagrees with the administrative judge's conclusions, but has presented no facts to support his allegation of bias. Broad, general allegations of bias are not sufficient to rebut the presumption of an administrative judge's honesty and integrity. *Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 19 (2013).

We find no indication that the administrative judge was biased in her adjudication of this appeal.

¶5        Concerning the substantive issues raised on review, in order to prevail in a negative suitability determination appeal, OPM must demonstrate by preponderant evidence that the appellant's conduct or character may have an impact on the integrity or efficiency of the service, based on one of the specific factors listed in 5 C.F.R. § 731.202(b). *Hudlin v. Office of Personnel Management*, 119 M.S.P.R. 61, ¶ 9 (2012); *see* 5 C.F.R. §§ 731.101(a), 731.202(a), 731.501(b). The Board has jurisdiction to review all aspects of a suitability determination, including whether the charged conduct renders an individual unsuitable for the positon in question. *Folio v. Department of Homeland Security*, 402 F.3d 1350, 1354-56 (Fed. Cir. 2005). If the Board determines that one or more of the charges brought by OPM is supported by a preponderance of the evidence, regardless of whether all specifications are sustained, it must affirm the suitability determination. 5 C.F.R. § 731.501(b)(1). If the Board sustains fewer than all the charges, the Board must remand the case to OPM to determine whether the resulting suitability action taken is appropriate based on the sustained charge. 5 C.F.R. § 731.501(b)(2).

OPM failed to establish Charges 1 and 2 by a preponderance of the evidence.

¶6        OPM relied on the same set of facts concerning the appellant's time and attendance when he worked for the Geary County Sheriff's Department to support both Charges 1 and 2. IAF, Tab 13 at 86. In Charge 1, OPM found that, during his employment with the Geary County Sheriff's Department, the appellant failed to properly request leave for 97 hours between June 9, 2011, and August 26, 2011. IAF, Tab 13 at 21. The second charge, criminal or dishonest conduct, was based on the same set of facts as the first charge. Because the first and second charges are based on the same set of underlying facts, the administrative judge appropriately merged them for analysis. ID at 4; *see Patton v. Department of the Treasury*, 94 M.S.P.R. 562, ¶ 14 (2003), *modified on other grounds by Scott v.*

*Office of Personnel Management*, 116 M.S.P.R. 356 (2011). Charges merge when they are based on the same misconduct and when proof of one charge constitutes proof of both charges. *Mann v. Department of Health & Human Services*, 78 M.S.P.R. 1, 7 (1998).

¶7　　　On review, the appellant argues that the administrative judge erred by shifting the burden of proof for Charge 1 to the appellant. PFR File, Tab 12 at 8-10. We agree. The initial decision states, "the appellant presented no evidence on specifically what he was doing on these dates to establish that he was actually on duty or had properly recorded his time." ID at 5. It was not the appellant's burden to disprove the charge. OPM had the burden of proving the charge by a preponderance of the evidence. *See* 5 C.F.R. § 731.501(b).

¶8　　　Next, the initial decision includes a list of dates on which the administrative judge found that OPM proved by preponderant evidence that the appellant did not work and did not properly request leave. ID at 5.[1] We find that the evidence does not support the administrative judge's findings. For example, the initial decision finds that the appellant failed to take leave on August 2, 2011, ID at 5, but the Geary County Sheriff's Department's records indicate that the appellant was not scheduled to work that day, IAF, Tab 13 at 148. The initial decision also finds that the appellant failed to take leave on August 10, 2011, ID at 5, but the Geary County Sheriff's Department's records include a statement from the appellant's coworker who worked with him on the night shift stating that the appellant "worked for the duration of his scheduled work duty shift," IAF, Tab 13 at 119. This is the same coworker whose allegations were the basis for

---

[1] We agree with the administrative judge's finding that OPM failed to prove, by a preponderance of the evidence, that the appellant was absent from duty and failed to take leave on August 3, 5, 8, 17, 24, 25, and 26, 2011. ID at 5. Both parties have noted an error in the initial decision. The initial decision finds that the appellant failed to take leave on August 24, 2011, while also noting that the timekeeping records show that the appellant took 12 hours of sick leave on that date. *Id.*; PFR File, Tab 5 at 21, Tab 9 at 7 n.1.

the Geary County Sheriff's Department's investigation into the appellant's time and attendance. *Id.* at 109.

¶9        At the hearing, the appellant testified to performing a number of collateral duties in addition to being a supervisory patrol officer. Hearing Compact Disc (HCD) (testimony of the appellant). Starting in late July 2011, one of those collateral duties was to assist the Background Investigation Unit (BIU) during the day shift. *Id.* The Undersheriff stated that the appellant's job performance was "good" but started to decline during the appellant's last 3 months of employment, which is around the time that he was assigned to the BIU. IAF, Tab 13 at 110.

¶10        Many of the dates relied on by OPM to support the charge that the appellant was negligent or committed misconduct appear to be dates when the appellant adjusted his hours to account for the hours he worked during the day shift with the BIU. The appellant and one other witness, however, testified that the Undersheriff told the appellant during a meeting to adjust his night shift hours by the number of hours he worked during the day shift with the BIU. *Id.* at 121; HCD (testimony of Detective A.R. and the appellant). The two other patrol officers assigned to assist the BIU corroborated this testimony, testifying that they received the same instruction to adjust their regularly scheduled patrol shifts based on the number of hours they worked assisting the BIU. IAF, Tab 13 at 50, 124-25. Further, the Undersheriff testified that it was "very hard" to determine when or for how many hours any of the patrol officers worked with the BIU. HCD (testimony of Undersheriff T.W.)

¶11        The record also does not support the administrative judge's finding that the appellant failed to take leave on July 27, 2011. ID at 5. That appears to be a day that the appellant did not work his scheduled night shift hours to compensate for working an entire day with the BIU. Although OPM's decision notes that the appellant did not report to work on July 27, 2011, the record also includes statements from two of the appellant's coworkers assigned to the BIU confirming

that he worked the entire day on July 29, 2011, a day that his regular schedule indicates he should have been off. IAF, Tab 13 at 121, 123, 147.

¶12      The initial decision finds that the appellant failed to take leave on August 9, 2011. ID at 5. August 9, 2011, appears to be a day the appellant worked 4 hours during the day shift to offset the 12-hour night shift he worked the following day. Thus, the Officer in Charge of the BIU stated, "[the appellant] took the 9th off to compensate for working his upcoming shift on the 10th." IAF, Tab 13 at 122. The Geary County Sheriff's Department's investigatory notes include the following notation next to August 9, 2011: "4 to offset 12 hr night shift." *Id.* at 150. The appellant's coworker confirmed that he worked his entire 12-hour shift on August 10, 2011. *Id.* at 139.

¶13      The initial decision finds that the appellant failed to take leave on August 18 and 19, 2011. ID at 5. August 18 and 19, 2011, also appear to be days the appellant did not work his scheduled night shift to account for having worked two full days on the day shift. The appellant was not scheduled to work on August 16 and 17, 2011, but was scheduled to work the night shift on August 18 and 19, 2011. IAF, Tab 13 at 148. While the evidence supports OPM's conclusion that the appellant did not work his scheduled night shifts on August 18 and 19, 2011, it also establishes that he worked the entire day shift on both August 16 and 17, 2011. *Id.* at 125, 150.

¶14      The record contains no evidence that the appellant was expected to work the complete day shift with the BIU on days he was scheduled to be off and also work his complete night shift according to the schedule. To the contrary, the evidence indicates that the three patrol officers assigned to assist the BIU were told to adjust their regularly scheduled hours based on how many hours they worked on the BIU. *Id.* at 50, 121, 124. While the other patrol officers assigned to the BIU usually worked on the day shift, the appellant was the only employee required to work at the BIU outside of his normally scheduled duty hours. *Id.* at 50, 124.

¶15     Moreover, Detective A.R. testified that the appellant, and all of the patrol officers, were expected to work 40 hours per week and to try to avoid overtime. HCD at 03:36. The appellant's résumé states that he worked 40 hours per week for the relevant time period. IAF, Tab 14 at 85. One of the appellant's coworkers stated during the investigation, "it was my understanding and has been my understanding since, based on [the appellant] still being assigned to night shift supervisor, he would be adjusting his hours accordingly to avoid going over a forty hour work week but still be able to assist with background investigations." IAF, Tab 13 at 124.

¶16     We further find that OPM failed to establish that the appellant was absent and did not request leave for 97 hours during the relevant time period. For example, considering August 8, 2011, OPM's decision concludes the appellant came to work 2 hours late. *Id.* at 21. The evidence proffered regarding the hours the appellant worked that work week,[2] however, indicates that the appellant worked at least 46 hours. *Id.* at 150 (4 hours on August 8, 4 hours on August 9, 12 hours on August 10, 8 hours on August 11, 8 hours on August 12, and 10 hours on August 13).[3]

¶17     We find, moreover, that the record does not support OPM's allegations regarding the remaining seven dates (June 9, 14, 15 and 28, July 8 and 27, and August 1, 2011) that the appellant was scheduled to work, reported to work, and purportedly left early without requesting leave. *Id.* at 20. OPM found that the statements the appellant provided from other Geary County Sheriff's Department employees in support of his response to the proposed suitability determination were not relevant because "these individuals were not directly involved in the

---

[2] We have deduced the days to include in a work week from the weeks identified in the investigatory notes from the Geary County Sheriff's Department. IAF, Tab 13 at 150.

[3] The appellant worked 10 hours on August 13, 2011, testing applicants with the BIU. *Id.* at 125, 127.

investigation and provided no evidence disputing that [the appellant was] found to have 97 hours of unaccounted for leave time, or that [his] separation was a direct result of [his] own conduct." *Id.* at 22-23. We disagree. Two of the letters were provided by witnesses directly involved in the Geary County Sheriff's Department's investigation who had first-hand knowledge about the hours the appellant worked with the BIU. *Id.* at 48-53. The Geary County Sheriff's Department and OPM relied on their statements to support the conclusion that the appellant was absent from the day shift when he was expected to work. *Id.* at 20. The letters they provided OPM in support of the appellant's response to the proposed suitability determination include relevant information that OPM should have considered in making its suitability determination.

¶18      Thus, for example, one witness stated that he was at a meeting where the Undersheriff told the appellant "not to worry about the difference in hours, that they would work it all out after all his assignments were completed and he returned to his normal patrol schedule." *Id.* at 48. The Geary County Sheriff's Department's investigation relied on the other witness as having "reported that there were days that she did not see [the appellant] at all, but [the appellant] should have been there." *Id.* at 20. In her letter in support of the appellant's response to OPM's suitability determination, she stated that the investigation contains "several discrepancies" from her interview. *Id.* at 50. She explained that, because of the nature of the work with the BIU, there was no expectation that she and the appellant would work at the same time. *Id.* at 51. She further stated that both she and the appellant were "instructed to flex and fluctuate [their] schedules." *Id.* She also clarified that her statement that the appellant was not there "was not an admission that he was not working." *Id.*

¶19      OPM also erred by failing to consider all of the relevant mitigating factors. When OPM determines that an individual is unsuitable for federal employment based on misconduct in prior employment, it is required by its own regulations to consider, among other factors, the circumstances surrounding the conduct and the

absence or presence of rehabilitation or efforts towards rehabilitation. *Hurlbut v. Office of Personnel Management*, 36 M.S.P.R. 250, 256 (1988); 5 C.F.R. § 731.202(c). OPM's decision does not consider the extraordinary circumstance the appellant faced working hours on both the day and night shifts during the relevant time period. The surrounding circumstances here include what appear to have been unclear instructions regarding how the patrol officers, including the appellant, were to account for the time they worked with the BIU. Thus, the appellant's former supervisor testified that none of the patrol officers assigned to the BIU followed the instruction to keep records of their own hours, but no one was disciplined for failing to follow this instruction. HCD (testimony of Undersheriff T.W.). The appellant first learned about the allegation he had not properly requested 97 hours of leave during the same September 9, 2011 meeting during which he tendered his resignation, and was not given the opportunity to see the evidence management relied on to conclude he committed misconduct or to make a meaningful rebuttal. IAF, Tab 13 at 42, Tab 14 at 39.

¶20      Based on the foregoing, we conclude that OPM failed to prove Charges 1 and 2.[4]

Charge 3 is supported by preponderant evidence.

¶21      We agree with the administrative judge's finding that OPM proved Charge 3, that the appellant provided false information in response to Question 12 of Optional Form 306. ID at 6-9. Under 5 C.F.R. § 731.202(b)(3), a "[m]aterial, intentional false statement, or deception or fraud in examination or appointment" may form a basis for finding an individual unsuitable. *Patton*, 94 M.S.P.R. 562, ¶ 13. To establish unsuitability based on falsification, OPM

---

[4] On review, the appellant also argues that the administrative judge erred in interpreting the Geary County Sheriff's Department's policies underlying the determination that he committed misconduct. PFR File, Tab 5 at 21. We find no error in these factual determinations. ID at 5-6. Even if the administrative judge erred, these facts are not material to our finding. *See* 5 C.F.R. § 1201.115(a).

must prove, by preponderant evidence, that the information was incorrect and that the appellant knowingly provided incorrect information with the intention of defrauding. *Id*. A falsification charge includes an element of private material gain. *See Boo v. Department of Homeland Security*, [122 M.S.P.R. 100](), ¶ 13 (2014). Securing employment is private material gain that will support a falsification charge. *Id.* Because there is seldom direct evidence on the issue, circumstantial evidence generally must be relied upon to establish intent. *Reid v. Department of the Navy*, [118 M.S.P.R. 396](), ¶ 11 (2012). Whether the element of intent has been proven must be resolved from the totality of the circumstances. *Id.*

¶22 Question 12 asked, in part, whether during the last 5 years the appellant had quit a job after being told that he would be fired.[5] IAF, Tab 13 at 86. The appellant answered this question "no." IAF, Tab 14 at 81. OPM found that the appellant should have answered this question "yes" because he resigned from his position with the Geary County Sheriff's Department after being told during a meeting on September 9, 2011, that he would be removed for misconduct if he did not resign. IAF, Tab 13 at 17.

¶23 The appellant's former supervisor claimed that he and one other manager met with the appellant on September 9, 2011, and during the meeting the appellant was confronted with the results of the investigation and given three options: (1) resign; (2) be terminated; or (3) have the issue taken to the County Attorney to consider bringing criminal charges against the appellant. IAF, Tab 14 at 38-39. The appellant's account of this same meeting is that he was confronted with the results of the investigation and informed that he was being reassigned to the day shift so that he could be more closely supervised. IAF,

---

[5] There are other inquiries in Question 12, but OPM has charged the appellant with falsification because of his response to this particular portion of Question 12. IAF, Tab 13 at 24.

Tab 13 at 42-43. The appellant believed that the reassignment would lead to additional allegations of misconduct and ultimately to his removal. *Id.* He claimed that he chose to resign rather than accept the reassignment. *Id.* As stated in the initial decision, the record includes the appellant's resignation and a notice of termination, both dated September 9, 2011. ID at 7. It is undisputed that the appellant was never shown the notice of termination. *Id.*

¶24 To resolve credibility issues, such as the ones presented here, an administrative judge must state which version of each disputed factual issue she believes, and explain in detail why she found the chosen version more credible, considering factors including the statement's consistency with other evidence and the inherent improbability of the witness's version of events. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). The administrative judge applied the *Hillen* factors and found that, although the appellant's prior statements were consistent with his testimony at the hearing, his version of what occurred during the meeting on September 9, 2011, was inherently improbable. ID at 7-9. The administrative judge made a reasonable credibility determination based on a review of the record as a whole, and we find no basis to disturb it on review. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002); *see also Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997).

¶25 Accordingly, because we have sustained only one of the three charges in OPM's negative suitability decision, we must REMAND this appeal to OPM to determine if the negative suitability actions are appropriate based on the only remaining sustained charge, Charge 3. *See* 5 C.F.R. § 731.501(b)(2).

## ORDER

¶26 We REMAND this appeal to OPM pursuant to 5 C.F.R. § 731.501(b)(2) to determine whether the suitability actions taken are appropriate based on the sustained charge.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:

_____
William D. Spencer
Clerk of the Board
Washington, D.C.